Edward LINGLE, Appellant,

v.

CRAWFORD COUNTY, Iowa; Alvin Miller, Personally and as Crawford County Weed Commissioner, Appellees.

No. 66074.

Supreme Court of Iowa.

Feb. 17, 1982.
Rehearing Denied March 12, 1982.

Gary L. McMinimee of Wunschel, Eich & McMinimee, P. C., Carroll, for appellant.

Thomas E. Gustafson, Crawford County Atty., Denison, for appellees.

Considered by UHLENHOPP, P. J., and McCORMICK, ALLBEE, LARSON and SCHULTZ, JJ.

LARSON, Justice.

Edward Lingle brought this action against Crawford County and its weed commissioner for unlawful entry when they arranged to have his farm property sprayed with a herbicide. From judgment entered on a jury verdict in favor of the defendants, the plaintiff has appealed, contending the trial court erred in (1) refusing to instruct the jury that as a matter of law the defendants trespassed on his property; (2) instructing the jury that he had the burden to prove "the spraying was done by the defendants without lawful authority"; (3) instructing the jury that the defendant weed commissioner had authority to enter the plaintiff's property to perform his duties; and (4) instructing the jury that all damages incurred as a result of the spraying were to be borne by him as the property owner.

For the most part the facts are not in dispute. On April 26, 1977, Crawford County, through its board of supervisors, issued a notice to property owners, ordering:

That each owner and each person in the possession or control of any lands in Crawford County shall cut, burn, or otherwise destroy all noxious weeds thereon as defined in this chapter, at such times in each year and in such manner as shall prevent said weeds from blooming or coming to maturity .... Noxious weeds shall be cut or otherwise destroyed on or before the following dates and as often thereafter to prevent production. Spraying shall be done 2 weeks earlier in each group.

Group 1. *May 10 to June 25, 1977, for ... Musk Thistle.*

\* \* \* \* \* \*

Group 3. *June 20 to July 5, 1977, for ... all other thistles belonging in Genera of Cirsium and Carduss.*

(Emphasis added.)

The plaintiff owned land that was, according to the weed commissioner, infested with thistles, including the bull and musk varieties. From May 10 to June 9 three notices were mailed to the plaintiff stating he had "substantially failed to comply" with the April 26 order of destruction, and demanding destruction of the thistles by May 16, June 10, and June 15, respectively. During this period of time the defendants discussed the problem with the plaintiff on several occasions. The plaintiff testified he told them something would be done to eradicate the thistles; the defendants introduced evidence he had not made a "commitment" to destroy them. Sometime in June the defendants became concerned that the thistles would soon start to germinate, and, exasperated with the plaintiff's unresponsiveness to their notices, arranged for the aerial spraying of his property. This task was accomplished on June 20.

I. *Entry under sections 317.6 and 317.16.*

Under chapter 317, The Code 1977, the legislature has provided counties with a procedure for the destruction of noxious weeds as agricultural nuisances. Section 317.13 provides that the board of supervisors "shall ... prescribe and order a program of weed control ... and shall designate the destruction dates to prevent seed production of all varieties of noxious weeds." Notice to property owners, detailing the time for and manner of destruction, is required under section 317.14. And, where there has been "*a substantial failure by [a property owner] to comply with any order of destruction pursuant to the provisions of this chapter,*" weed commissioners shall have full power and authority to enter upon any land within their county for the purpose of destroying noxious weeds. Such entry may be made without the consent of the landowner or person in possession or control of the land but *actual work of destruction shall not be commenced until five days after the service of a notice in writing on the landowner and on the person in possession or in control of the land. The notice shall state the facts as to failure of compliance* with the county program of weed de-

struction order or orders made by the board of supervisors *and shall be served in the same manner as an original notice* . . . . The notice may be served by the weed commissioner, his deputies or any person designated in writing by the weed commissioner and filed in the office of the county auditor.

§ 317.6, The Code (emphasis added). Only if the notice of noncompliance has been served may the weed commissioner act:

In case of a substantial failure to comply by the date prescribed in any order of destruction of weeds made pursuant to the provisions of this chapter, the weed commissioner or his deputies shall, *subsequent to the time after service of the notice provided for in section 317.6* enter upon the land and cause such weeds to be destroyed.

§ 317.16, The Code (emphasis added).

■ The question is not whether the plaintiff made a commitment to destroy the thistles during his discussions with the defendants, or whether he failed to comply with the three notices to destroy; rather, it is whether he substantially complied with the April 26 order of destruction issued under section 317.13. We conclude as a matter of law that, at the time of the spraying on June 20, the plaintiff was not in violation of the order. It is undisputed that the defendants sprayed the plaintiff's property five days prior to the deadline for destruction of group-1 noxious weeds, and approximately two weeks prior to the deadline for destruction of group-3 noxious weeds. Thus, because the defendants acted prematurely, there could not have been a failure by the plaintiff to substantially comply with the order.

■ The defendants rely on section 317.4, which provides that a weed commissioner "shall have authority at any time to enter upon any land in his county for the performance of his duties." But any general authority under this statute must be circumscribed by the specific authority granted to a weed commissioner "to enter upon any land within [his] county for the purpose of destroying noxious weeds" under sections 317.6 and 317.16. *See* § 4.7, The Code 1981.

We consider the defendants' other arguments on this issue to be without merit. Accordingly, it was error for the trial court to submit the issue of authorized entry or justification to the jury after the plaintiff had moved to withdraw it. *See Poulsen v. Russell*, 300 N.W.2d 289, 296 (Iowa 1981); *Isaacs v. Bruce*, 218 Iowa 759, 763, 254 N.W. 57, 59 (1934). *See generally* 2 A. Vestal & P. Willson, *Iowa Practice and Procedure* § 39.05, at 229–30 (1974). The elements of trespass, *e.g., Iowa State Highway Commission v. Hipp*, 259 Iowa 1082, 1092, 147 N.W.2d 195, 199 (1966), were established by the plaintiff as a matter of law and it was error for the court to submit the issue to the jury. It is unnecessary to address the other issues on liability raised by the parties.

II. *Damages under section 317.15.*

■ Section 317.15 provides that "loss or damage to crops or property incurred by reason of such destruction shall be borne by the titleholder of said real estate. . . ." The plaintiff claims that section 317.15 should be construed to include a requirement "that the acts and damages must in fact be necessary to remove or abate a nuisance," citing *Rhyne v. Town of Mount Holly*, 251 N.C. 521, 112 S.E.2d 40 (1960). The defendants contend that any resulting damage to the plaintiff's property from the spraying is to be borne by the plaintiff under the statute, and that to hold otherwise amounts to a judicial rewriting of it. It is clear that if the statute is literally construed no liability attaches to the tortious actions of the defendants. *See* §§ 317.15, 613A.2, 613A.4(4), The Code.

Four arguments persuade us to conclude the legislature did not intend to grant counties absolute immunity in section 317.15. First, serious constitutional questions would be involved if the statute is literally construed. *See, e.g., Rhyne*, 251 N.C. at 527–

28, 112 S.W.2d at 45–47. Under section 4.4(1), The Code 1981, it is presumed compliance with the federal and state constitutions is intended when a statute is enacted. *See also* § 4.6(5), The Code 1981. Second, a literal construction of section 317.15 would leave the property owner a right without a corresponding remedy, and under section 4.2, The Code 1981, a statute should be construed to assist a party in obtaining justice. Third, it is not entirely clear that the "such destruction" language of section 317.15 was intended to include the loss or damage to crops or property incurred when the weed commissioner is acting under sections 317.6 and 317.16; it is just as reasonable to construe the statute as applicable only to losses or damages caused by the property owner in his compliance with the county's program of weed control. Finally, if the statute is literally construed a county will be immune for *any* loss or damage to property in destroying noxious weeds on private property, including damages caused by intentional torts. We do not believe the legislature intended to create such blanket immunity. *See* § 4.6(5), The Code 1981.

Accordingly, the immunity provided in section 317.15 is limited only to losses or damages to crops or property which are reasonably necessary in destroying noxious weeds under sections 317.6 and 317.16. *See Rhyne*, 251 N.C. at 528–29, 112 S.W.2d at 46–47; 6 E. McQuillin, *The Law of Municipal Corporations* § 24.87, at 592 (3d ed. 1980).

REVERSED AND REMANDED.