INDIANA STATE HIGHWAY COMMIS-
SION, Appellant-Plaintiff,

v.

Cletus ZILIAK and Ernestine Ziliak,
Appellees-Defendants.

No. 1–880A203.

Court of Appeals of Indiana,
First District.

Feb. 25, 1982.

Linley E. Pearson, Atty. Gen., Jeffrey G. Fihn, Deputy Atty. Gen., Indianapolis, for appellant-plaintiff.

Ronald Warrum, Evansville, for appellees-defendants.

RATLIFF, Presiding Judge.

### DISSENT FROM DENIAL OF PETITION FOR REHEARING

The Indiana State Highway Commission[1] (Commission) in its petition for rehearing

---

1. Ind.Code 8–9.5–4–11 (Supp.1981) transferred

all powers, duties, and liabilities of the Com-

contends that this court erred in its opinion rendered in this cause on November 30, 1981, and found at 428 N.E.2d 275. The questions posed by the Commission's petition for rehearing are

"1.) Whether the November 30, 1981 opinion of the Court erroneously decided a new question of law by ignoring the statutory authority granted to the Indiana State Highway Commission under I.C. 8–13–2–12.2 and I.C. 32–11–1–1 to enter the Ziliak property prior to exercising the right of eminent domain for the purposes of conducting an archaeological survey pursuant to its power to inspect, examine and survey the property.

"2.) Whether the November 30, 1981 decision of the Court contraven[e]s ruling precedent of federal law established by the United States Court of Appeals for the Seventh Circuit in *Scottsdale Mall v. State of Indiana* 549 F.2d 484, 488 (7th Cir. 1977) holding that highway construc-

tion projects constituting 'major federal action' require complaince [sic] with the National Environmental Policy Act, 42 U.S.C. § 101 et seq., by submitting of an environmental impact statement consisting of findings obtained through archaeological survey data gathered prior to condemnation?

"3.) Whether this Court's affirmation of the trial court's negative judgment upon Appellant's complaint for injunctive relief was in conflict with prior opinions of the Court of Appeals in that the evidence presented below on the record was without conflict leading to but one conclusion, but that this court and the lower court reached a contrary conclusion which decision should be reversed as being contrary to law?"

The Commission contends that our refusal to consider the effect of Ind.Code 8–13–5–12,[2] which was repealed effective July 1,

mission effective July 1, 1981, to the Department of Highways, and Ind.Code 8–9.5–4–12 (Supp.1981) provides that any reference to the Commission after June 30, 1981, shall be treated as a reference to the Department. For the sake of consistency in our opinions, we shall continue to refer to the appellant as the Commission.

2. IC 8–13–5–12
   Acquisition of property; eminent domain entry on property, appeals
   Sec. 12. The Indiana state highway commission is hereby given the right, in the name of the state of Indiana, to purchase, or by voluntary grants and donations receive or otherwise acquire, lands and rights necessary for the construction, repair and maintenance of any state highway, and necessary for the relocating, widening or straightening of any state highway, or necessary for the clearing and removing of obstructions to the vision at highway crossings and curves, or for any other purpose or use contemplated by this act. The state highway commission is hereby endowed with the right of eminent domain in so far as the same may be necessary or proper for the carrying out of the provisions of this act. If the state highway commission shall be unable to agree with the owner of the land or right, or with the guardian of such owner, touching the damages sustained by such owner, or touching the purchase price of the land or right, the state highway commission may proceed, in the name of the state of Indiana, in the exercise of the right of

eminent domain with which it is under this act endowed, to condemn the land or right necessary or proper for the carrying out of the provisions of this act under the laws of this state. Whenever the state highway commission shall deem it necessary to acquire any real estate or right for any purpose contemplated in this act, it may adopt an appropriate resolution setting forth the description of the real estate or right sought to be acquired by it, the purpose for which the real estate is to be used, and such other facts as the state highway commission may deem necessary or pertinent, and shall refer such resolution to the attorney general. Thereupon the attorney general shall commence an action in the name of the state of Indiana in the proper court for the condemnation of the real estate or right described in such resolution and shall take all necessary and proper steps to secure the condemnation of the real estate or right. Any authorized employee or representative of the state highway commission engaged in the execution of any survey authorized by the commission, or by the chairman, may enter upon any lands or waters within this state for the purpose of inspecting, making soil and foundation investigations, leveling, transporting any equipment, or doing any work determined necessary to carry out any of the provisions of this act. However, before any authorized employee or representative of the state highway commission shall enter upon any lands or waters within this state, the occupant, if any, of the lands or waters shall be notified in

1981, was erroneous because the pertinent part of the statute providing the Commission with the power and procedure to take less than the entire fee was in essence reenacted by the legislature at Ind.Code 8–13–2–12.2 (Supp.1981).[3] The Commission is correct in asserting that we overlooked the reenactment of this statute. Therefore, we may not ignore, as we did in our earlier opinion, the effect of these statutes, and I would vote to grant Commission's petition for rehearing and to reverse our earlier decision.

"Statutes of eminent domain are in derogation of the common law rights of property and must be strictly followed, both as to the extent of the power and as to the manner of its exercise." *City of Indianapolis v. Schmid*, (1968) 251 Ind. 147, 240 N.E.2d 66, 67, cited in *Highland Realty, Inc. v. Indianapolis Airport Authority*, (1979) Ind.App., 395 N.E.2d 1259, 1266. *See also, Iowa State Highway Commission v. Hipp*, (1966) 259 Iowa 1082, 147 N.W.2d 195. Nevertheless, in interpreting statutes it is this court's primary objective to ascertain and give effect to the intent of the legislature. *Highland Realty, Inc. v. Indianapolis Airport Authority, supra*; 26 I.L.E. *Statutes* § 111 (1960). Where that intent is

writing by first class United States mail of such purpose at least five (5) days prior to the date of entry: Provided, however, That upon entry to any lands or waters the state highway commission employee or agent shall first present his written identification or authorization from the state highway commission to the occupier of the lands or waters, if available. If by such entry and if in the doing of such work as hereinabove provided any injury is done to the lands or waters entered upon, and any damages result from such injury or work, the aggrieved party shall be compensated therefor by the state highway commission out of the appropriate highway fund. If the aggrieved party is dissatisfied with the compensation as determined by the state highway commission the amount of damages shall be assessed by the county agricultural agent of the county wherein the lands or waters are located and two (2) other disinterested freeholders of the county, one (1) appointed by the aggrieved party and one (1) appointed by the state highway commission. A written report of the assessment of damages shall be mailed to the aggrieved party and the state highway commission by first class United States mail. However, if either the aggrieved party or the state highway commission is dissatisfied with the assessment of damages either or both may file a petition within fifteen (15) days after receipt of the report in the circuit or superior courts of the county in which the lands or waters are located, for a review thereof. (*Formerly: Acts 1933, c.18, s.18; Acts 1963, c.302, s.1*).

3. IC 8–13–2–12.2 (Supp.1981)
Surveys; right of entry on lands or waters; notice to occupant; damages
   Sec. 12.2 Any authorized employee or representative of the department of highways engaged in the execution of any survey authorized by the director or his designee, may enter upon any lands or waters within this state for the purpose of inspecting, making soil and foundation investigations, leveling, transporting any equipment, or doing any work determined necessary to carry out any of the provisions of this chapter. However, before any authorized employee or representative of the department of highways shall enter upon any lands or waters within this state, the occupant, if any, of the lands or waters shall be notified in writing by first class United States mail of such purpose at least five (5) days prior to the date of entry: Provided, however, That upon entry to any lands or waters the department of highways employee or agent shall first present his written identification or authorization from the department of highways to the occupier of the lands or waters, if available. If by such entry and if in the doing of such work as hereinabove provided any injury is done to the lands or waters entered upon, and any damages result from such injury or work, the aggrieved party shall be compensated therefor by the department of highways. If the aggrieved party is dissatisfied with the compensation as determined by the department of highways the amount of damages shall be assessed by the county agricultural agent of the county wherein the lands or waters are located and two (2) other disinterested freeholders of the county, one (1) appointed by the aggrieved party and one (1) appointed by the department of highways. A written report of the assessment of damages shall be mailed to the aggrieved party and the department of highways by first class United States mail. However, if either the aggrieved party or the department of highways is dissatisfied with the assessment of damages either or both may file a petition within fifteen (15) days after receipt of the report in the circuit or superior courts of the county in which the lands or waters are located, for a review thereof. *As added by Acts 1981, P.L.41, SEC.37.*

clearly expressed by the language of the legislation, we may not construe the statute to mean something other than what it plainly and unambiguously states on its face. Thus, as we stated in our earlier opinion, the term "survey" as used at Ind. Code 32–11–1–1 [4] to us conveys the ordinary meaning of viewing or measuring the surface area of real property. However, when more than one statute relates to the same subject matter the statutes must be read *in pari materia*, and an attempt to harmonize the various provisions will be made. *Economy Oil Corp. v. Indiana Dept. of State Revenue*, (1974) 162 Ind.App. 658, 321 N.E.2d 215. We may not construe a statute in such a way "as to willfully and unnecessarily narrow or emasculate its *provisions*." *White v. White*, (1975) 167 Ind.App. 459, 468, 338 N.E.2d 749, *trans. denied*. In the case at bar it is clear that the Commission, which at IC 32–11–1–1 is given express authority to conduct a survey prior to the initiation of condemnation proceedings, is also given the authority and methods in IC 8–13–2–12.2 to engage in activities resulting in more than a surface survey and in a taking of less than the entire fee upon compliance with proper notice procedures and with provisions for the payment of damages.

This position is not contrary to that taken by this court in *Indiana & Michigan Electric Co. v. Stevenson*, (1977) 173 Ind.App. 329, 363 N.E.2d 1254, *trans. denied*, cited in our earlier opinion. In that case Judge Lowdermilk set out IC 32–11–1–1 (footnote 4) and Article I, § 21 of the Indiana Constitution:

" 'Compensation for services or property. —No man's particular services shall be demanded, without just compensation. No man's property shall be taken by the law without just compensation; nor, except in the case of the State, without such compensation first assessed and tendered.' "

173 Ind.App. 333, 363 N.E.2d 1254. Judge Lowdermilk determined that under the statute "a public utility's right to enter private property for the purpose of examination and survey confers no license to engage in a course of destruction of crops, timber, etc.," 173 Ind.App. 334, 363 N.E.2d 1254, and under the Constitution that IMEC's action had amounted to a taking of private property for which compensation should have first been assessed and tendered.[5] The court, therefore, affirmed an award of punitive damages because IMEC's

---

**4.** IC 32–11–1–1

Entry on land; purchase prior to instituting proceedings

Sec. 1. Any person, corporation or other body having the right to exercise the power of eminent domain for any public use, under any statute, existing or hereafter passed, and desiring to exercise such power, shall do so only in the manner provided in this chapter except as otherwise provided herein. Before proceeding to condemn, such person, corporation or other body may enter upon any land for the purpose of examining and surveying the property sought to be appropriated or right sought to be acquired; and shall make an effort to purchase for the use intended such lands, right-of-way, easement or other interest therein or other property or right. In case such land or interest therein or property or right is owned by one who is of unsound mind or under eighteen (18) years of age, the person, corporation or other body seeking to obtain the land or interest therein for such use may purchase the same of the regularly constituted guardian of such insane person or person under eighteen (18) years of age; and if such purchase shall be approved by the

court or judge thereof appointing such guardian, and such approval written upon the face of the deed, such conveyance of the premises so purchased, and the deed made and approved by such court or judge, shall be valid and binding upon such insane person under eighteen (18) years of age. The deed so given, when executed in lieu of condemnation, shall convey only the interest stated in the deed. Wherever land is taken by condemnation proceedings, the entire fee simple title thereto may be taken and acquired if such land is taken for the site of a station, terminal, powerhouse, substation, roundhouse, yard, car barn, office building or any other purpose except for a right-of-way. (*Formerly: Acts 1905, c.48, s.1; Acts 1973, P.L.23, SEC.24*).

**5.** Judge Lowdermilk defined "taking" as "a substantial interference with the owners['] use and enjoyment of the specific property allegedly taken" and stated that whether or not the interference is substantial is a question for the trier of fact. 173 Ind.App. 335, 363· N.E.2d 1254.

unconstitutional action had relegated it to the status of a trespasser. In the case at bar I note at least two distinguishing, and I would maintain decisive, factors which would permit the Commission to seek the requested relief. First, the Commission is a state agency, rather than a semi-private corporation as in IMEC, hence is given the right under the Indiana Constitution to defer assessment and payment of damages until after the taking occurs. Second, the legislature has given the Commission the power and procedures in IC 8–13–2–12.2 to effect a taking of less than the entire fee as contemplated by legislation embodied in Title 32 of the Indiana Code. Furthermore, this position is in harmony with the holdings in the majority of cases in other jurisdictions confronted by similar types of legislation. *See* Annot., *Eminent Domain: Right to Enter Land for Preliminary Survey or Examination*, 29 A.L.R.3d 1104 (1970).

Upon further consideration I am also constrained to agree with the Commission that our earlier holding appears to contravene the spirit, if not the letter, of federal and state highway and environmental legislation which logically requires, where possible, the filing of an environmental impact statement prior to condemnation. All the federal cases I have read point to the desirability of making the environmental impact study as early in the planning stages of highway development as possible. While I disagree with the Commission that *Scottsdale Mall v. State of Indiana*, (7th Cir. 1977) 549 F.2d 484, *cert. denied*, 434 U.S. 811, 98 S.Ct. 47, 54 L.Ed.2d 68, explicitly states that an environmental impact statement must be filed prior to the initiation of condemnation proceedings, I would agree that the court holds therein that the utilization of federal funds in a highway project from the beginning, as is true here, marks the project as a "major federal action" requiring compliance with the National Environmental Policy Act of 1969 (NEPA). In *Swain v. Brinegar*, (7th Cir. 1976) 542 F.2d 364, the seventh circuit court held that the NEPA requires an environmental impact statement to be prepared for a project prior to

the decision to commit federal funds. And a federal district court in California, relying on Ohio and Texas cases, has held that where "a major federal action" is involved, the failure of the condemnor to file an environmental impact statement pursuant to NEPA is a valid defense to a condemnation action: *United States v. 18.2 Acres of Land, More or Less, in Butte County, California*, (E.D.Calif.1977) 442 F.Supp. 800. Thus a reading of these federal cases in conjunction with state and federal environmental protection statutes, leads only to the conclusion that an environmental impact statement should be filed early in the planning stages of highway development programs which in effect would be prior to the initiation of condemnation proceedings. *Accord*, 6A Nichols on Eminent Domain §§ 33.2[2][d], [3] and 33.3[1][a] (1981).

Therefore, I would modify our original opinion and agree with the Commission that the trial court erred in finding under the statutory authority set out above that the Commission had no right or power to come onto the Ziliak farm to conduct an intensive archaeological survey without first exercising its power of eminent domain. Because the court's conclusion is contrary to the plain and unambiguous language of IC 8–13–2–12.2 (formerly IC 8–13–5–12) I would vote to grant the Commission's petition for rehearing, and to reverse and remand this cause to the trial court for further proceedings not inconsistent with this opinion.

NEAL and ROBERTSON, JJ., vote to deny rehearing.